Clarence **BURT**

v.

The **STOP & SHOP COMPANIES, INC.**

Civ. A. No. 74-5137-C.

United States District Court,
D. Massachusetts.

Nov. 28, 1975.

C. David Grayer, Boston, Mass., for plaintiff.

Paul F. Ware, Jr., Goodwin, Procter & Hoar, Boston, Mass., for defendant.

## OPINION

CAFFREY, Chief Judge.

This is a civil action brought for alleged violation of plaintiff's civil rights. Jurisdiction of this court is invoked under 28 U.S.C. § 1343 for causes of action alleged to have arisen under 42 U.S.C. § 2000e-5(f)(1) and pursuant to 42 U.S.C. § 1981. Plaintiff seeks declaratory and injunctive relief, as well as money damages, against defendant Stop & Shop Companies, Inc. (Stop & Shop), a Massachusetts corporation. Stop & Shop operates retail supermarkets for the sale of food and merchandise in Massachusetts and Connecticut.

The matter came on for non-jury trial and after presenting the testimony of two witnesses, one of whom was the plaintiff, the plaintiff rested. Thereupon, the defendant, acting pursuant to Rule 41 of the Federal Rules of Civil Procedure, moved for a dismissal on the ground that on the facts and on the law the plaintiff has shown no right to relief. With reference to this motion I find and rule as follows.

Plaintiff Clarence Burt is a black citizen of the United States and a resident of Springfield, Massachusetts. He is married and has a family consisting of three children. He began working for Stop & Shop as a part-time employee in 1952 and worked as a full-time employee of Stop & Shop from 1953 until he was involuntarily terminated on December 4, 1969.

It appears from plaintiff's own evidence, without contradiction, that on December 2, 1969 plaintiff was a reserve store manager trainee, assigned to Stop & Shop Store No. 624 located on Park Street, Hartford, Connecticut. On the evening of December 2, plaintiff as a reserve manager trainee was the person in actual charge of that store and he was responsible for locking up the cash, locking up the store, and for security of the property contained in the store. Plaintiff locked the store to the general public at 9:00 p. m. and left the store, with two other employees, shortly after 10:00 p. m.

Under the laws of the State of Connecticut, it is illegal, at least for a grocery store, to sell beer after 8:00 p. m.

Signs to that effect are posted in all Stop & Shop stores in Connecticut that sell beer and announcements are made daily over the stores' public address systems within an hour prior to 8:00 p. m. advising all customers that no beer purchases may be made after 8:00 p. m. Plaintiff himself frequently placed a canvas cover over the beer display in the store at 8:00 p. m. Plaintiff testified that he often made the announcements himself about the 8:00 p. m. beer sale curfew over the public address system and that he was and had been for some years familiar with the Connecticut law limiting such sales.

Mr. Burt testified that at about ten minutes to ten he decided to purchase a six-pack of beer, that just before leaving he took a six-pack from the cooler, put it in a brown paper bag and placed the paper bag near cash register #1. He testified that he took a white envelope and placed $1.35—representing the cost of the six-pack plus 7¢ for the tax—in the envelope, sealed it, wrote a note on the outside of the envelope to Harry Wheeler, the head cashier, advising Mr. Wheeler of the purchase, and left the envelope in the store's courtesy booth. Plaintiff testified that at about the time he placed the six-pack near the cash register he observed a Stop & Shop security officer, Dennis Dec, standing outside the store. He testified that he left the store with two other employees, whereupon Mr. Dec approached him and engaged him in a conversation as to the contents of the brown paper bag. He said that Dec asked what was in the bag, that he handed the bag to Dec, who looked into the bag, examined the contents, and asked plaintiff where the cash register receipt was. Plaintiff advised Dec that he had not rung up the purchase on the cash register but had left the money in the store. Plaintiff testified that he requested Dec to reenter the store with him to find the money for the beer, but that Dec declined due to the fact that the burglar alarms had already been set for the night. He agreed to accompany

Dec to a nearby Bradlee store where he remained on the street floor while Dec went to an upstairs office to make a telephone call. Plaintiff advised Dec that he was not scheduled to work on December 3. On the morning of December 3, although not scheduled to work, plaintiff drove his car past Store No. 624 at either 6:50 or 7:00 a. m., at which time he observed Dec entering the store with another employee. Plaintiff elected, upon seeing Dec, not to enter the store or make any attempt at that time to clarify the whereabouts of the envelope containing the purchase price of the beer.

At the trial, plaintiff testified that on December 2 he believed he had placed the envelope on a ledge in the courtesy booth by reaching in through a window. He conceded that he later learned that, in fact, he had placed the envelope with the money in a pouch in which he had placed a number of vendor invoices upon which he had been working that evening between 9:00 and 10:00 p. m.

Plaintiff testified that on the night of December 3 he was contacted by one John Dunn, a Stop & Shop employee, who requested that plaintiff meet him the following morning at a Howard Johnson's in Springfield. Plaintiff, accompanied by his wife, met Dunn and a Stop & Shop supervisor of personnel, Robert Collins, at the Howard Johnson's between 9:00 a. m. and 10:00 a. m. on December 4. Driving his own car, plaintiff followed them to what plaintiff characterized as a remote truck leasing warehouse in Hartford. There they were joined by Dec and his supervisor, a Mr. Amory. After some conversation, in which Dec gave his version of the events of December 2 and plaintiff in turn gave his version thereof, plaintiff was asked to resign, declined to do so, and was told that Stop & Shop had no recourse but to terminate him. Plaintiff then left the warehouse and returned to his home and has never gone back to Store No. 624. He testified that he was told at the meeting that the rea-

son for his termination was for violation of the company purchasing policy.

During the trial, a Stop & Shop "Standard Practices and Procedures Manual" was introduced into evidence by plaintiff (PX–3). The Manual states (on p. 36),

"The following are causes for immediate suspension and dismissal:

1. *Dishonesty*

    a. The pilferage of money or merchandise by an employee . . ."

During cross-examination of plaintiff it was brought out that Stop & Shop has a policy relative to employee purchases which was set out in writing, and which was introduced into evidence as defendant's exhibit A. The Company's policy in this regard is also detailed in the Stop & Shop Manual at pages 59–60.

Plaintiff testified that he had seen such a written policy statement, and that he had in fact utilized the "assigned register" method of purchase a number of times over the years. The policy provided that in each store employees may purchase through only one cash register which is the assigned cash register for employees. In fact, plaintiff conceded that it was part of his job as a manager trainee to enforce and police the employee purchase policy of Stop & Shop.

Turning to the specific allegations in the charging part of plaintiff's complaint, in the first cause of action the crucial allegations are the following five paragraphs contained on page 3 of the complaint, captioned "IV. STATEMENT OF CLAIM:"

"10. Plaintiff Burt while employed by Defendant Company was subjected to terms and conditions of employment different than those of white employees which were discriminatory and based upon his race and/or color.

11. The hiring and promotional practices of Defendant Company continuously discriminated against Plaintiff Burt during his employment on the basis of his race and/or color.

12. Plaintiff Burt was subjected to disparate treatment by Defendant Company which was discriminatory and based on his race and/or color.

13. The discharge of Plaintiff Burt by Defendant Company was discriminatory and based upon his race and/or color.

15. Defendant Company has discriminated against Plaintiff Burt on grounds of race and/or color in violation of Section 703 of the Civil Rights Act of 1964 as amended, 42 U.S.C. Section 2000 e–2."

Plaintiff's second cause of action consists solely of paragraph 16, which alleges:

"16. Defendant Company has discriminated against Plaintiff Burt on grounds of race and/or color in violation of 42 U.S.C. Section 1981."

I rule that on all the evidence adduced at the trial plaintiff has failed to offer a scintilla of credible evidence in support of paragraphs 10, 11, 12, 13, 15 or 16. In so ruling I have in mind the absence of any direct evidence tending to prove any of the above numbered paragraphs, as well as the total absence of any circumstantial evidence which, either taken alone or in combination with direct evidence, would supply a basis for the Court's inferring the existence of those facts which must be established by a preponderance of the evidence by plaintiff in order to sustain his burden of proof herein. Indeed, the fact that plaintiff remained in the employment of defendant for some seventeen years and the further fact that his wife is presently an employee of defendant is circumstantial evidence tending to prove the absence of racial bias in the relations between defendant and plaintiff.

I find that plaintiff's own case has proved that Stop & Shop had certain rules regulating the conduct of its employees and the method by which employee purchases were to be made. I find that plaintiff was guilty of violating those promulgated company rules, all of which were well known to him as a manager trainee. I find that Stop & Shop has applied a sanction which while arguably heavy, nevertheless, was a well advertised sanction brought to the attention of such management persons and notices and, additionally, to the attention of such tmanagement persons as plaintiff by various company manuals. Lastly, I find that plaintiff has utterly failed to offer any evidence that racial discrimination was at the root of his termination.

Consequently, the motion to dismiss is allowed.

Judgment accordingly.